# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BAXTER SENIOR LIVING, LLC,<br><br>                      Plaintiff,<br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>                      Defendant. | Case No. 3:22-cv-00044-SLG |

## ORDER CERTIFYING QUESTIONS TO THE ALASKA SUPREME COURT

This matter is presently before the United States District Court for the District of Alaska on Defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

Pursuant to Rule 407 of the Alaska Rules of Appellate Procedure, the U.S. District Court respectfully requests the Alaska Supreme Court to answer the following certified questions of Alaska law:

1) Under Alaska law, can the presence of the COVID-19 virus at an insured property constitute "direct physical loss of or damage to" the property for the purposes of a commercial insurance policy?

2) Under Alaska law, can operating restrictions imposed on an insured property by COVID-19 pandemic-related governmental orders constitute "direct physical loss of or damage to" the property for the purposes of a commercial insurance policy?

# BACKGROUND[1]

In 2019, Plaintiff Baxter Senior Living, LLC, opened a senior-living facility in Anchorage, Alaska. To insure the facility, Baxter obtained a "Property Portfolio Protection" (PPP) insurance policy from Defendant Zurich American Insurance Company. Relevant here, the policy provided Baxter with "Business Income" and "Extra Expense" insurance coverage. But the policy specified that both coverages only applied to losses caused by "direct physical loss of or damage to" Baxter's insured property.

> **Business Income Coverage Form**
>
> . . .
>
> We will pay for the actual loss of "**business income**" you sustain due to the necessary "**suspension**" of your "**operations**" during the "**period of restoration**". The "**suspension**" must be caused by direct physical loss of or damage to property at a "**premises**" at which a Limit of Insurance is shown on the Declarations for Business Income. The loss or damage must be directly caused by a "**covered cause of loss**".[2]
>
> . . .
>
> **Extra Expense Coverage Form**
>
> . . .
>
> We will pay for the actual and necessary "**extra expense**" you incur due to direct physical loss of or damage to property at a "**premises**"

---

[1] These background facts are drawn from the allegations in Baxter's complaint, which the district court must take as true for the purposes of Baxter's motion to dismiss. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party.").

[2] Docket 2-1 at 150, ¶ A.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 2 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 2 of 13

at which a Limit of Insurance is shown for Extra Expense on the Declarations. The loss or damage must be directly caused by a "**covered cause of loss**".[3]

According to the complaint, the onset of the COVID-19 pandemic in early 2020 significantly impacted Baxter's operations. The pandemic prevented Baxter from offering tours of its facility, and the facility soon fell below 60 percent occupancy. In March 2020, Baxter received an email from a licensing specialist at the Alaska Department of Health and Social Services listing the Center for Disease Control's (CDC) "recommended . . . interventions [for] Assisted Living Facilities to reduce the risk [C]ovid-19 poses to residents of your facilities."[4] Baxter interpreted this email as a State requirement that it restrict the use of its facility, including by canceling large live gatherings, increasing social distancing, implementing closures and quarantines as needed, and suspending visitor access.[5]

In August 2020, the State of Alaska issued an official document entitled *COVID-19 Recommended Guidance for Congregate Residential Settings* that recommended "aggressive efforts to limit COVID-19 exposure and to prevent the spread of COVID-19 within [residential care] facilities." The document set out a three-phase system for operating residential care facilities. Under the system, facilities would begin at the first phase, which imposed strict limitations on facilities'

---

[3] Docket 2-1 at 159, ¶ A.

[4] A copy of the email is attached to Baxter's complaint. Docket 2-1 at 217–19.

[5] Docket 2-1 at 4–5, ¶¶ 13, 16.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 3 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 3 of 13

operation and residents' activities. If a facility went 14 days without a new-onset COVID-19 case, the facility could progress to the next phase, which would have looser limitations. Although it was entitled "recommended guidance," the August 2020 document invoked the Governor of Alaska's "Public Health Disaster Emergency" powers, and it specified that residential care facilities' adoption of the phased-in system or a "similar" system was mandatory.[6]

Baxter alleges that the COVID-19 virus and the State's restrictions caused it to lose business income and incur extra expenses. In September 2020, Baxter submitted a claim to Zurich under the policy. Zurich denied Baxter's claim, stating that the policy "does not provide coverage for the loss of revenue and extra expenses incurred by [Baxter]."[7] On February 2, 2022, Baxter sued Zurich in Alaska Superior Court.[8] Baxter's complaint alleges nine causes of action against Zurich: seven claims for breach of contract (Claims 1 to 7) and two claims for breach of the implied covenant of good faith and fair dealing (Claims 8 and 9).[9] Claims 1 to 6 each involve coverage predicated on "direct physical loss of or

---

[6] Docket 2-1 at 221–26.

[7] Docket 2-1 at 6, ¶¶ 21–22.

[8] Docket 2-1 at 1–21.

[9] Docket 2-1 at 10–20, ¶¶ 41–128.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 4 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 4 of 13

damage to" insured property. Zurich removed the case to the U.S. District Court on March 4, 2022.[10]

## DISCUSSION

Zurich asserts that Claims 1 through 6 of Baxter's Complaint fail to state a claim upon which relief can be granted. Noting that each of the claims rely on provisions of the policy that condition coverage on "direct physical loss of or damage to" insured property, Zurich asserts that the facts in Baxter's complaint, even if taken as true, do not establish that Baxter suffered any "direct physical loss of or damage to" any property covered by the policy. A considerable majority of courts in the United States, both state and federal, have precluded coverage in these circumstances, concluding that the COVID-19 pandemic's effects on a business facility do not constitute a "direct physical loss of or damage to" insured property.[11] A minority of courts have held that loss of the physical use of a business facility due to the COVID-19 pandemic and related government restrictions constitute a "direct physical loss" of insured property.[12]

Although the Alaska Supreme Court has issued decisions in cases involving insurance policies that covered "direct physical loss or damage to" property, the phrase's construction was not at issue in any of those cases, each of which clearly

---

[10] Docket 1.

[11] *See infra* at 6–10 & nn. 14–29.

[12] *See infra* at 10–11 & nn. 32–36.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 5 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 5 of 13

involved physical destruction of property.[13] Moreover, as of the date of this order, the Alaska Supreme Court has not yet issued any published decisions involving Alaska insurance law and the COVID-19 pandemic.

As of the date of this order, courts in the following jurisdictions have all held—frequently in connection with the COVID-19 pandemic—that the phrase "direct physical loss of or damage to" requires physical, tangible alteration or destruction of insured property:

- California;[14]

- Florida;[15]

---

[13] *See Whispering Creek Condo. Owner Ass'n v. Alaska Nat'l Ins. Co.*, 774 P.2d 176 (Alaska 1989) (imminent building collapse); *Underwriters at Lloyd's, London v. United Bank Alaska*, 636 P.2d 615 (Alaska 1981) (airplane crash); *Pepsi Cola Bottling Co. of Anchorage v. N.H. Ins. Co.*, 433 P.2d 670 (Alaska 1967) (earthquake damage); *Pepsi Cola Bottling Co. of Anchorage v. N.H. Ins. Co.*, 407 P.2d 1009 (Alaska 1965) (same).

[14] *E.g.*, *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 3d 27, 37 (Cal. Ct. App. 2010) ("[D]irect physical loss 'contemplates an actual change in insured property . . . occasioned by accident or other fortuitous event directly upon the property'" (quoting *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. Ct. App. 2003))); *see also, e.g.*, *Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 286 Cal. Rptr. 3d 576, 586–93 (Cal. Ct. App. 2021) (holding that suspension of business operations due to COVID-19 pandemic did not constitute "direct physical loss of or damage to" property); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) (concluding that "California courts would construe the phrase 'physical loss of or damage to' as requiring an insured to allege physical alteration of its property").

[15] *Commodore, Inc. v. Certain Underwriters at Lloyd's, London*, 342 So. 3d 697, 701–05 (Fla. Dist. Ct. App. 2022) (holding that "direct physical loss of or damage to" property requires "actual, tangible alteration to the insured property," and that government closure orders during COVID-19 pandemic did not suffice because "loss of intended use alone, without tangible alteration to the property, is not sufficient to trigger coverage").

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 6 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 6 of 13

- Georgia;[16]

- Illinois;[17]

- Iowa;[18]

- Maryland;[19]

- Massachusetts;[20]

---

[16] *E.g.*, *AFLAC*, 581 S.E.2d at 319 (holding that "direct physical loss or damage . . . contemplates an actual change in insured property"); *see also, e.g.*, *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 35 F.4th 1318, 1320–21 (11th Cir. 2022) ("[U]nder Georgia law, a 'direct physical loss' always involves a tangible change to a property.").

[17] *See, e.g.*, *Sweet Berry Café, Inc. v. Soc'y Ins., Inc.*, 193 N.E.3d 962, 974–75 (Ill. App. Ct. 2022) (holding that the COVID-19 virus did not cause "direct physical loss of or damage to" property because "no property needed to be repaired or replaced," and concluding that any "loss of use" caused by government shutdown order was not "direct physical loss"); *see also, e.g.*, *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 421 (7th Cir. 2022) ("[W]ith respect to Illinois law . . . the phrase 'direct physical loss' in a commercial property insurance policy 'requires a physical alteration to property'—that is, some 'alteration in appearance, shape, color or . . . other material dimension.' . . . Absent such alteration, direct physical loss occurs only when a risk causes 'complete physical dispossession of property,' and the COVID-19 virus does not." (third alteration in original) (quoting *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 331, 333–34 (7th Cir. 2021))).

[18] *Wakonda Club v. Selective Ins. Co. of Am.*, 973 N.W.2d 545, 552–55 (Iowa 2022) (holding that "direct physical loss of or damage to" property requires "a physical element" and that the "possibility of the COVID-19 virus being present" did not suffice); *see also, e.g.*, *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (concluding that, under Iowa law, "there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction").

[19] *GPL Enter., LLC v. Certain Underwriters at Lloyd's*, 276 A.3d 75, 83–85 (Md. Ct. Spec. App. 2022) (holding that "direct physical loss of or damage to" property requires "tangible, physical damage," and that COVID-19 government restrictions did not suffice (quoting *Cordish Cos. Inc. v. Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 998 (D. Md. 2021))).

[20] *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d 1266, 1275–76 (Mass. 2022) (holding that "'direct physical loss of or damage to' property requires some 'distinct, demonstrable, physical alteration of the property,'" and concluding that the presence of COVID-19 viral particles and related government restrictions did not constitute "direct physical loss of or damage" (quoting

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 7 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 7 of 13

- Michigan;[21]

- New Jersey;[22]

- New York;[23]

- North Carolina;[24]

- Ohio;[25]

---

[10] A Steven Plitt et al.,*Couch on Ins.* § 148:46 (3d ed. 2016))).

[21] *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, ___ N.W.2d ___, 2022 WL 301555, at *4–5 (Mich. Ct. App. Feb. 1, 2022) (holding that "the word 'physical' necessarily requires the loss or damage to have some manner of tangible and measurable presence or effect in, on, or to the premises," and concluding that COVID-19 government closure orders alone could not constitute "direct physical loss").

[22] *See, e.g.*, *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, 278 A.3d 272, 283–87 (N.J. Super. Ct. App. Div. 2022) (holding that "direct physical loss" or "damage" requires "detrimental physical alteration of some kind, or . . . physical loss of the insured property," and that suspension of business operations caused by COVID-19 did not constitute such loss).

[23] *E.g.*, *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. App. Div. 2002) (holding that "direct physical loss or damage" "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage"); *see also Consol. Restaurant Operations, Inc. v. Westport Ins. Corp.*, 167 N.Y.S.3d 15, 18 (N.Y. App. Div. 2022) ("[W]here a policy specifically states that coverage is triggered only where there is 'direct physical loss or damage' to the insured property, the policy holder's inability to fully use its premises as intended because of COVID-19, without any actual, discernable, quantifiable change constituting 'physical' difference to the property from what it was before exposure to the virus, fails to state a cause of action for a covered loss.").

[24] *N. State Deli, LLC v. Cincinnati Ins. Co.*, 875 S.E.2d 590, 592–93 (N.C. Ct. App. 2022) (holding that "direct physical loss of or damage to property" requires "*direct*, accidental, *physical* loss or damage," and that COVID-19 government shutdown orders did not constitute such loss because they caused no "physical harm to [the] property").

[25] *Sanzo Enters., LLC v. Erie Ins. Exch.*, 182 N.E.3d 393, 408 (Ohio Ct. App. 2021) (holding that "direct physical loss or damage" requires "tangible, material, or structural deprivation or harm," and concluding that COVID-19 virus and related government shutdown orders did not suffice); *see also, e.g.*, *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401–06 (6th Cir. 2021) (concluding that, under Ohio law, a "pandemic-triggered government order[] barring in-person

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 8 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 8 of 13

- Oklahoma;[26]

- South Carolina;[27]

- Washington;[28] and

- Wisconsin.[29]

And of the jurisdictions that have addressed the question, a considerable majority have held that the requirement of "direct physical loss of or damage to" insured property precludes coverage for losses caused by the COVID-19 virus and pandemic-related governmental orders.[30] In May 2022, the U.S. Court of Appeals for the Eleventh Circuit observed: "As far as we can tell, every federal and state

---

dining at a restaurant" does not constitute "direct physical loss of or damage to" the property).

[26] *Cherokee Nation v. Lexington Ins. Co.*, ___ P.3d ___, 2022 WL 4138429, at *3–6 (Okla. Sept. 13, 2022) (holding that "direct physical loss of or damage to" property unambiguously requires "actual, tangible deprivation or destruction of property," and that a voluntary closure during COVID-19 pandemic did not suffice).

[27] *Sullivan Mgmt., LLC v. Fireman's Fund Ins. Co.*, ___ S.E.2d ___, 2022 WL 3221920, at *2–4 (S.C. Aug. 10, 2022) (holding that neither a government COVID-19 shutdown order nor the presence of COVID-19 virus constituted "direct physical loss or damage," because "the order itself was not directly physical" and the COVID-19 virus's presence did not involve "a tangible or material component to loss or damage").

[28] *See Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 515 P.3d 525, 531–35 (Wash. 2022) (holding that even under a "loss of functionality" interpretation, "direct physical loss" requires "some *physical* effect on the property," and that COVID-19 shutdown orders did not suffice).

[29] *See Colectivo Coffee Roasters, Inc. v. Soc'y Ins.*, 974 N.W.2d 442, 447 (Wisc. 2022) ("[T]he presence of COVID-19 does not constitute a physical loss of or damage to property because it does not 'alter the appearance, shape, color, structure, or other material dimension of the property.'" (quoting *Sandy Point Dental P.C. v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693-94 (N.D. Ill. 2020))).

[30] *See supra* notes 14 to 29.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 9 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 9 of 13

appellate court that has decided the meaning of 'physical loss of or damage to' property (or similar language) in the context of the COVID-19 pandemic has come to the same conclusion and held that some tangible alteration of the property is required."[31]

However, there are a minority of courts that have held differently. Earlier in the pandemic, several federal district courts concluded that intangible damage or loss of use could constitute "direct physical loss of or damage to" insured property.[32] Some of these courts have observed that the language "loss" in "direct physical loss of or damage to" suggests that the provision must encompass something distinct from tangible, physical damage. In one such case, a district court concluded that government-imposed restrictions on in-person dining could constitute "direct physical loss" of several restaurants' insured property because "the pandemic-caused shutdown orders do impose a *physical* limit: the restaurants

---

[31] *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1358 (11th Cir. 2022).

[32] *E.g.*, *Seifert v. IMT Ins. Co.*, 542 F. Supp. 3d 874, 878–80 (D. Minn. 2021) (concluding that, as a matter of first impression, the Minnesota Supreme Court would interpret "direct physical loss" to "only require some injury to an owner's ability to occupy and control property as intended, not an absolute or permanent dispossession"); *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 457, 462–63 (N.D. Ill. 2021) (concluding that, under Texas law, "the term 'physical loss' is broad enough to cover . . . a deprivation of the use of [a policyholder's] business premises"); *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360, 375–76 (E.D. Va. 2020) (concluding that, under Virginia law, the term "direct physical loss" was ambiguous and could cover situations where "the property is uninhabitable, inaccessible, or dangerous to use because of intangible, or non-structural, sources").

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 10 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 10 of 13

are limited from using much of their physical space."[33] But at least one of these district court decisions has been reversed on appeal,[34] and appeals are pending in several others.[35]

The Louisiana Court of Appeal recently reached a similar conclusion to these federal district courts, reasoning that the phrase "direct physical loss of or damage to" was ambiguous.[36] Because Louisiana law, like Alaska law, requires ambiguous insurance policy provisions to be construed in favor of coverage,[37] the Louisiana Court of Appeal construed the term "direct physical loss" to cover a policyholder's "[inability] to fully utilize the insured property due to the viral particles inside the

---

[33] *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729, 741–42 (N.D. Ill. 2021). This case is still ongoing in the Northern District of Illinois. The court is taking briefing on the effect of the Seventh Circuit's holding in *Bradley Hotel Corp. v. Aspen Specialty Insurance Co.* that "the term 'direct physical loss of or damage to' property does not apply to a business's loss of use of [insured] property without any physical alteration," 19 F.4th 1002, 1004–05 (7th Cir. 2021), on the trial court's earlier decision. Minute Entry, *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. 1-20-cv-05965 (N.D. Ill. Dec. 13, 2021), CM/ECF No. 318.

[34] *Henderson Rd. Restaurant Sys., Inc. v. Zurich Am. Ins. Co.*, 513 F. Supp. 3d 808, 820–24 (N.D. Ohio 2021) (concluding that, under Ohio law, "direct physical loss of or damage to" property was ambiguous and could cover loss of use of insured property due to pandemic), *rev'd*, *In re Zurich Am. Ins. Co.*, No. 21-0302, 2021 WL 4473398, at *1–2 (6th Cir. Sept. 29, 2021).

[35] *E.g.*, *Elegant Massage, LLC, v. State Farm Mut. Auto. Ins. Co.*, No. 22-01853 (4th Cir. Aug. 15, 2022).

[36] *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, ___ So. 3d ___, 2022 WL 2154863, at *5–7 (La. Ct. App. June 15, 2022), *rehearing en banc denied*, *id.* at *10 (La. Ct. App. Aug. 8, 2022).

[37] *See, e.g.*, *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 2007); *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 88 (Alaska 2008).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 11 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 11 of 13

property."[38]  Additionally, the Vermont Supreme Court has recently held that COVID-19 virus particles "physically alter" insured property when they adhere to surfaces, and that this physical alteration constitutes "direct physical damage" under a commercial insurance policy.[39]

Whether the presence of the COVID-19 virus and/or COVID-19 pandemic-related governmental orders that limit operations at an insured property constitutes "direct physical loss of or damage to" the property appears to be a question of Alaska law as to which there is no controlling precedent. In the present case, the resolution of these questions may be determinative of Claims 1 through 6 of Baxter's Complaint. Furthermore, given the "historic number of claims" for business losses the COVID-19 pandemic has created,[40] the district court believes these questions are important to Alaska insurers and policyholders.

Therefore, the district court respectfully requests the Alaska Supreme Court to answer the certified questions of Alaska law presented above. The district court will abide by the Alaska Supreme Court's answers to these certified questions, which the Alaska Rules of Appellate Procedure provide "shall be res judicata as to

---

[38] *Cajun Conti*, 2022 WL 2154863, at *5–7.

[39] *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, ___ A.3d ___, 2022 WL 4396475, at *11–12 (Vt. Sept. 23, 2022).

[40] John DiMugno, *The Implications of COVID-19 for the Insurance Industry and Its Customers: 2021 Developments*, 43 No. 3 Ins. Litig. Rep. NL 1 (2021).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 12 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 12 of 13

the parties and have the same precedential force as any other appellate decision of the supreme court."[41]

## ORDER

This matter is STAYED pending proceedings in the Alaska Supreme Court. The parties shall notify this Court whether the Alaska Supreme Court agrees to answer the certified questions in a joint report to be filed within **seven days** of the Alaska Supreme Court's decision on that topic. If the Alaska Supreme Court accepts the certified questions, the parties shall file a joint status report with the district court six months after the date of such acceptance and every six months thereafter.

The Clerk of Court shall transmit to the Alaska Supreme Court a signed copy of this order under the official seal of the U.S. District Court for the District of Alaska. The Clerk of Court shall also provide the Alaska Supreme Court with a copy of the record in this case.

DATED this 30th day of September 2022, at Anchorage, Alaska.

                               */s/ Sharon L. Gleason*
                               UNITED STATES DISTRICT JUDGE

---

[41] Alaska R. App. P. 407(f).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order Certifying Questions to the Alaska Supreme Court
Page 13 of 13

Case 3:22-cv-00044-SLG   Document 25   Filed 09/30/22   Page 13 of 13