Doug Karet, Alaska Bar No. 1211099
Andrew Erickson, Alaska Bar No. 1605049
LANDYE BENNETT BLUMSTEIN LLP
701 West Eighth Ave., Suite 1100
Anchorage, AK 99501
(907) 276-5152
dougk@lbblawyers.com
andye@lbblawyers.com

*Attorneys for Plaintiff Baxter Senior Living, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| BAXTER SENIOR LIVING, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 3:22-cv-00044-SLG |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO MOTION TO DISMISS**

Pursuant to this Court's October 30, 2024 Order,[1] Baxter Senior Living, LLC submits this supplemental brief in opposition to Zurich American Insurance Company's

---

[1] Docket 47.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*　　Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss　　　　Page 1 of 18

Motion to Dismiss.[2] In light of the Alaska Supreme Court's decision on the certified questions posed by this Court,[3] the only issue remaining is whether Claims 7 through 9 in the Complaint should be dismissed. For the reasons explained in Baxter's opposition to the motion to dismiss,[4] and described more fully below, this Court should deny the motion to dismiss with respect to Claims 7 through 9 because Baxter stated a claim for breach of the insurance policy's Communicable Disease Coverage provision (Claim 7), and Claims 8 and 9 are derivative, surviving if Claim 7 does. Zurich fails to demonstrate that Claim 7 is not at least plausible on its face. Baxter received orders from public health officials during the COVID-19 pandemic and limited access to its facility accordingly. Thus, Baxter is entitled to damages as a result of Zurich's denial of insurance coverage.

## FACTS AND PROCEEDINGS

The procedural posture and history of this matter are well known to the parties and this Court; however, because this case has been stayed since September 20, 2022, Baxter provides the following brief overview of the relevant facts and proceedings.

In 2019, Baxter opened a senior residential living facility in Anchorage and obtained a commercial Property Portfolio Protection insurance policy from Zurich.[5] On March 12,

---

[2] Docket 10.

[3] *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*, 556 P.3d 757 (Alaska 2024).

[4] Docket 18.

[5] Docket 2-1 at 29.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*   Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss   Page 2 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 2 of 18

2020, Alaska's first case of COVID-19 was confirmed in Anchorage,[6] sparking an unprecedented "cascade of closures and cancellations" throughout the state.[7]

On that same day—March 12—in response to the global COVID-19 pandemic, a licensing specialist from the Alaska Department of Health and Social Services (DHSS) sent Baxter an email containing the Centers for Disease Control (CDC) recommendations for assisted living facilities.[8] Baxter interpreted the CDC recommendations as health directives requiring Baxter to restrict usual operations and limit access to the facility.[9] According to Baxter's regional director, "within the days immediately following that email, Baxter immediately suspended new admissions to its facility," "suspended guests' ability to visit the premises," and "instituted strict social distancing and hygiene protocols for its

---

[6] Morgan Krakow, *Alaska's First Positive Coronavirus Case Identified As Pilot On Cargo Flight*, ANCHORAGE DAILY NEWS (Mar. 12, 2020) (https://www.adn.com/alaska-news/2020/03/13/first-positive-alaska-coronavirus-case-identified/). Although Baxter's argument does not depend in any way on the facts reported in the *Anchorage Daily News*, this Court "may take judicial notice of undisputed matters of public record" when deciding a motion to dismiss. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

[7] Morgan Krakow, *Coronavirus-related Cancellations and Closures Sweep Across Alaska*, ANCHORAGE DAILY NEWS (Mar. 14, 2020) (https://www.adn.com/alaska-news/2020/03/15/cancellations-and-closures-sweep-across-alaska-in-wake-of-states-first-coronavirus-case/).

[8] Docket 2-1 at 217-19.

[9] Docket 2-1 at 231-32; *see Baxter Senior Living*, 556 P.3d at 760.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*   Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss   Page 3 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 3 of 18

residents and staff."[10] "For the period from March 12, 2020 to at least March 26, 2020, Baxter did not admit any new residents in accordance with the CDC's directives."[11]

In August 2020, DHSS issued "COVID-19 Recommended Guidance for Congregate Residential Settings,"[12] which consisted of "aggressive efforts to limit COVID-19 exposure and to prevent the spread of COVID-19 within [residential care] facilities."[13] As this Court previously explained,

> The document set out a three-phase system for operating residential care facilities. Under the system, facilities would begin at the first phase, which imposed strict limitations on facilities' operation and residents' activities. If a facility went 14 days without a new-onset COVID-19 case, the facility could progress to the next phase, which would have looser limitations. Although it was entitled "recommended guidance," the August 2020 document invoked the Governor of Alaska's "Public Health Disaster Emergency" powers, and it specified that residential care facilities' adoption of the phased-in system or a "similar" system was mandatory.[14]

Based on the State's public health orders, Baxter "refused tours of the facility, reduced residents' access to friends and family, suspended new admissions and visits to the facility, and instituted strict distancing and hygiene protocols for all residents and

---

[10] Docket 2-1 at 231-32.

[11] Docket 2-1 at 232.

[12] Docket 2-1 at 5, 221-29.

[13] Docket 2-1 at 221.

[14] Docket 25 at 3-4.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 4 of 18

Case 3:22-cv-00044-SLG     Document 50     Filed 11/27/24     Page 4 of 18

staff."[15] Baxter also filed a claim with Zurich under the insurance policy for business losses as a result of the COVID-19 pandemic and the public health orders.[16] Zurich denied Baxter's claim for coverage without specifying any reasons for its denial.[17]

On February 2, 2022, Baxter filed a Complaint against Zurich alleging nine causes of action. Claims 1 through 6 consisted of breach of contract claims based on various insurance policy coverage provisions, each predicated on "direct physical loss of or damage to" Baxter's property.[18]

Claim 7 alleged a breach of contract claim based on the insurance policy's "Communicable Disease Suspension of Operations-Business Income" provision (the "Communicable Disease Coverage"), which states:[19]

> [T]he coverage provided at a "premises" or "reported unscheduled premises" will also cover the actual loss of "business income" you sustain due to an order of an authorized public health official or governmental authority that prevents access to that "premises" or "reported unscheduled premises," or a portion of that "premises" or "reported unscheduled premises," because of the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that "premises" or "reported unscheduled premises."[20]

---

[15] *Baxter Senior Living*, 556 P.3d at 760.

[16] Docket 2-1 at 6.

[17] Docket 2-1 at 6.

[18] Docket 2-1 at 10-18.

[19] Docket 2-1 at 18-19.

[20] Docket 2-1 at 171.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 5 of 18

Case 3:22-cv-00044-SLG     Document 50     Filed 11/27/24     Page 5 of 18

In Claim 7, Baxter specifically contended that "the presence of COVID-19 at Baxter's senior living facility, the State's various directives and orders relating to the COVID-19 pandemic, and the need to keep residents and staff safe from infection" caused Baxter to incur covered losses under the insurance policy due to restrictions and limited access to the facility.[21]

Finally, Claims 8 and 9 alleged that Zurich breached the implied covenant of good faith and fair dealing and acted in bad faith by unreasonably denying Baxter's legitimate claims under the insurance policy, including Baxter's claim under the Communicable Disease Coverage provision.

On March 24, 2022, Zurich filed a Motion to Dismiss Baxter's Complaint.[22] Zurich argued that Baxter failed to allege "direct physical loss of or damage" to any covered property and that the "microorganism exclusion" in the insurance policy precluded coverage.[23] Baxter opposed the motion,[24] and Zurich replied.[25]

On September 30, 2022, this Court certified two legal questions to the Alaska Supreme Court, explaining that "the resolution of these questions may be determinative of

---

[21] Docket 2-1 at 18-19.

[22] Docket 10.

[23] Docket 10 at 5, 7.

[24] Docket 18.

[25] Docket 24.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*  Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss    Page 6 of 18

Claims 1 through 6 of Baxter's Complaint."[26] Importantly, in denying Zurich's motion for reconsideration of the certification order, this Court rejected Zurich's alternative arguments for dismissal, noting that Claims 7 through 9 do not depend on the same contract provisions at issue in Claims 1 through 6, and thus, Claims 7 through 9 provide an independent basis for relief.[27]

On September 27, 2024, the Alaska Supreme Court issued its decision in *Baxter Senior Living LLC v. Zurich American Insurance Company*, concluding that neither the presence of COVID-19 at an insured property nor operational restrictions imposed by governmental health orders related to COVID-19 constitute a "direct physical loss of or damage" to the property under the insurance contract.[28]

Following the Alaska Supreme Court's decision, this Court ordered supplemental briefing regarding the status of Zurich's Motion to Dismiss.

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[29] To state a claim for breach of an insurance contract, the plaintiff "must allege with

---

[26] Docket 25 at 12.

[27] Docket 28 at 2.

[28] *Baxter Senior Living*, 556 P.3d at 770.

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 7 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 7 of 18

specificity that an insurance contract existed between the plaintiff and the defendant, that the defendant breached that contract, and that the plaintiff suffered damages as a result."[30]

Under Alaska law, courts "treat insurance policies as contracts of adhesion," which are construed "so as to provide that coverage which a layperson would have reasonably expected from a lay interpretation of the policy terms."[31] "[T]he policyholder's 'objectively reasonable expectations' govern, even if 'painstaking study of the policy provisions would have negated those expectations.' "[32]

## ARGUMENT

Based on the Alaska Supreme Court's decision on the certified questions, Baxter agrees that Claims 1 through 6 fail to state a claim and should be dismissed. However, this Court should deny Zurich's Motion to Dismiss with respect to Claims 7 through 9 because Baxter stated a claim for breach of the insurance policy's Communicable Disease Coverage provision (Claim 7). Baxter received public health directives from DHSS and the CDC, and as a result of the COVID-19 pandemic and complying with those public health directives, Baxter limited access to portions of its facility resulting in business losses covered by the insurance policy. Consequently, Zurich's denial of coverage under the

---

[30] *Richards v. United States*, No. 2:24-cv-00002-SLG at * 7 (D. Alaska Nov. 12, 2024) (citing *Brooks Range Petroleum Corp. v. Shearer*, 425 P.3d 65, 79 (Alaska 2018)).

[31] *Downing v. Country Life Ins. Co.*, 473 P.3d 699, 704 (Alaska 2020) (internal quotation marks omitted) (quoting *U.S. Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979)).

[32] *Id*. (quoting *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004)).

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*   Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss   Page 8 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 8 of 18

Communicable Disease Coverage provision was a breach of the contract (Claim 7), a breach of the covenant of good faith and fair dealing (Claim 8), and a tort (Claim 9). Thus, Baxter is entitled to damages based on Zurich's unreasonable refusal to honor the insurance contract.

## I. Baxter Stated a Claim for Breach of Contract Under the Communicable Disease Coverage Provision (Claim 7).

Zurich's main argument for dismissing Claim 7 focuses on the fact that Baxter "never ceased operations," never "shuttered" its facility, and never claimed that government orders "prohibited" all access to the facility.[33] But Zurich's argument is a red herring. Zurich erroneously relies on other cases involving different types of insurance coverage provisions.[34] Here, the Communicable Disease Coverage provision does not require Baxter to establish that public health orders completely shuttered the facility. On the contrary, the policy specifically contemplates partial closures and restrictions, exactly like those alleged in Claim 7.

The Communicable Disease Coverage provision at issue in this case has three elements. First, there must be an "order of an authorized public health official or governmental authority."[35] On March 12, Baxter received an email from DHSS containing

---

[33] Docket 10 at 14.

[34] Docket 10 at 14-15 (citing *HealthPartners, Inc. v. Am. Guar. & Liability Ins. Co.*, 2022 WL 597518, at * 8 (D. Minn. Feb. 28, 2022) and *Palomar Health v. Am. Guar. & Liability Ins. Co.*, 2021 WL 4035005, at * 9 (S.D. Cal. Sept. 3, 2021)).

[35] Docket 2-1 at 171.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*   Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss   Page 9 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 9 of 18

the CDC's recommendations for assisted living facilities.[36] "The CDC has recommended the following interventions be taken by Assisted Living Facilities to reduce the risk [COVID-19] poses to residents of your facilities."[37] Although Zurich characterizes the March 12 email as merely "recommendations," Baxter reasonably considered an urgent email from the DHSS licensing department—which has the power to issue fines and suspend or revoke Baxter's license—passing on CDC directives—and arriving right at the outset of a global health crisis—as a public health order that required immediate compliance.[38] "Upon receiving the March 12, 2020 email, Baxter did not consider a directive from the CDC, in the midst of a global pandemic, to be a suggestion."[39] Baxter treated the email as the functional equivalent of a public health order and acted immediately

---

[36] Docket 2-1 at 217.

[37] Docket 2-1 at 217.

[38] *See Lawrence Gen. Hosp. v. Cont'l Cas. Co.*, 90 F.4th 593, 604 (1st Cir. 2024) (construing government health guidelines as orders under communicable disease coverage provision); *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 118-19 (S.D.N.Y. 2021) (same).

[39] Docket 2-1 at 231.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 10 of 18

Case 3:22-cv-00044-SLG     Document 50     Filed 11/27/24     Page 10 of 18

and reasonably to follow the DHSS and CDC's guidance.[40] Thus, the DHSS and CDC's guidance, at the time and in the context that it was issued,[41] was an "order" as that term would have been understood by a lay person applying common sense.[42]

In addition to the March 2020 DHSS and CDC guidance, Baxter also received directives from DHSS in August 2020, imposing "strict limitations" on Baxter's facility and operations.[43] The August DHSS directives were unmistakably an order from public health officials. As this Court and the Alaska Supreme Court have both previously

---

[40] On March 25, Baxter received a follow-up email from DHSS attaching "the latest guidelines related to assisted living homes." Docket 2-1 at 237. The March 23, 2020 DHSS directives required Baxter to "[r]estrict all visitors," "[c]ancel all group activities and communal dining," and "[c]lose rooms or unit to new admissions if you have ill residents with suspected or confirmed COVID-19." DHSS, COVID-19 Guidance for Long-Term Care, Residential and Assisted Living Facilities, Updated March 23, 2020 (https://health.alaska.gov/dph/Epi/id/SiteAssets/Pages/HumanCoV/DHSS_LTCF_COVID19-Guidance_20200323.pdf). This Court may take judicial notice of the March 23, 2020 DHSS guidance because it is a public record. *See Cty. of Orange*, 682 F.3d at 1132.

[41] Docket 2-1 at 247 ("For several weeks in March 2020, Baxter did not admit any new residents into the facility whatsoever. At the time, I understood that Baxter was not admitting new residents into the facility in order to comply with regulations issued by the [DHSS and CDC]."); *see also* Docket 2-1 at 232 ("[DHSS's licensing specialist] responded to my email on March 25, 2020, and she noted that Baxter was able to admit new residents as long as it followed the guidelines that she attached to her response to me.").

[42] *See Downing*, 473 P.3d at 704 (in applying Alaska law, courts must avoid a "painstaking study" of insurance contract provisions and instead apply the policyholder's "objectively reasonable expectations"). Although other courts have concluded that an "order must be compulsory," *see Lawrence Gen. Hosp.*, 90 F.4th at 604, the "choice" to comply with the DHSS and CDC directives or face revocation of Baxter's DHSS residential assisted living facility license was "no choice at all." *Id*. at 605.

[43] Docket 25 at 3.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 11 of 18

Case 3:22-cv-00044-SLG     Document 50     Filed 11/27/24     Page 11 of 18

recognized, the August 2020 guidance from DHSS was "mandatory."[44] "If a facility adopted the guidance, the document warned that 'the actions contained in that document [would] become mandatory as your facilities [*sic*] requirements.' Thus if a facility 'fails to meet all the phase criteria and continues to progress to a less stringent phase, the facility may be subject to enforcement action(s)."[45] Zurich cannot reasonably argue that the August 2020 DHSS guidance did not constitute a public health order.

Second, the Communicable Disease Coverage provision requires that "access to that premises or reported unscheduled premises, *or a portion of that premises*" was prevented by the orders.[46] Here, Baxter complied with the DHSS and CDC orders, which by their own terms limited access to Baxter's facility.[47] Zurich does not seriously dispute that the DHSS and CDC recommended that assisted living facilities, including Baxter, implement social distancing measures, consider closure or quarantine, cancel large gatherings, suspend visitor access, and consider short-term closures as needed.[48] Baxter alleges that in response to the public health guidance, Baxter instituted a "lockdown" of its facility[49] and "adopted a policy which significantly reduced the residents' friends and families from

---

| | |
|---|---|
| 44 | Docket 25 at 4; *see supra* note 14 and accompanying text. |
| 45 | *Baxter Senior Living*, 556 P.3d at 760-61 (alterations in original). |
| 46 | Docket 2-1 at 171 (emphasis added). |
| 47 | Docket 2-1 at 5. |
| 48 | Docket 2-1 at 217-18. |
| 49 | Docket 2-1 at 4. |

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 12 of 18

Case 3:22-cv-00044-SLG     Document 50     Filed 11/27/24     Page 12 of 18

physically accessing the facility."[50] Each of the required restrictions had the effect of limiting access to portions of Baxter's facility. As one example, the dining hall was closed ("Baxter would not permit its residents to eat their meals in the dining hall, due to concerns about the spread of [COVID-19]").[51]

Zurich's reliance on *Palomar* and *HealthPartners* for the proposition that a facility must be "shuttered" to trigger the Communicable Disease Coverage provision is misplaced.[52] In *Palomar*, the relevant insurance policy provided coverage only if "portions of the location are declared *uninhabitable* due to the threat of the spread of communicable disease, prohibiting access to those portions of the [l]ocation."[53] Similarly, in *HealthPartners*, the insurance policy's communicable disease provision required a "[*s*]*uspension* of the [i]nsured's business activities" due to a public health order.[54] Neither of those contractual provisions are relevant, or even analogous, to the Communicable Disease Coverage provision in this case, which notably provides broader coverage, applying simply when access is restricted to a "portion" of the facility.

---

[50] Docket 2-1 at 247.

[51] Docket 2-1 at 233, 252.

[52] Docket 10 at 14-15.

[53] *Palomar Health v. Am. Guar. & Liab. Ins. Co.*, 2021 U.S. Dist. LEXIS 167978 at * 25 (S.D. Cal. Sep. 3, 2021) (emphasis added).

[54] *HealthPartners, Inc. v. Am. Guar. & Liab. Ins. Co.*, 587 F. Supp. 3d 874, 877 (D. Minn. 2022) (emphasis added).

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*   Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss   Page 13 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 13 of 18

Third, the restrictions imposed by the public health orders must be "because of the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that premises."[55] The orders here responded to the threat of the spread of COVID-19 *everywhere*, including at Baxter's facility. The August 2020 DHSS directive noted that residential living facilities, like Baxter, "have been impacted by COVID-19 due to the vulnerable nature of the [residential living facility] home population—combined with the inherent risks of congregate living in a health care setting."[56] Baxter's Complaint alleges that the facility experienced 44 positive COVID-19 cases, affecting 26 residents and 18 staff.[57]

Although some courts in other jurisdictions have imposed a heightened requirement for plaintiffs to show "causation" between a public health order and a communicable disease outbreak at the insured premises,[58] this Court applying Alaska law should primarily consider Baxter's reasonable expectations when interpreting the Communicable Disease Coverage provision.[59] Baxter reasonably expected that the Communicable Disease Coverage provision *would* apply to CDC and DHSS orders issued to mitigate disease

---

[55] Docket 2-1 at 171.

[56] Docket 2-1 at 221.

[57] Docket 2-1 at 5.

[58] *See Paradigm Care & Enrichment Ctr., LLC v. W. Bend*, 33 F.4th 417, 422-23 (7th Cir. 2022).

[59] *Downing*, 473 P.3d at 704.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*   Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss   Page 14 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 14 of 18

outbreaks, including the global COVID-19 pandemic, and provide coverage for losses necessarily incurred as a result of compliance with those directives.[60] Zurich apparently shared that reasonable expectation because Zurich abruptly removed the Communicable Disease Coverage provision from its insurance policy in July 2020—during the height of the pandemic.[61] And Zurich has paid other claims under similar or identical Communicable Disease Coverage provisions in other cases.[62]

Finally, Zurich's argument that Claim 7 is barred by the insurance policy's microorganism exclusion is meritless. The microorganism exclusion applies to claims brought under the insurance policy's Real and Personal Property Coverage provisions,[63] but it is not applicable to claims under the Communicable Disease Coverage provision. As Baxter pointed out in its opposition to the motion to dismiss, the Communicable Disease Coverage provision is an "Additional Coverage," which applies independently of other coverages.[64] Importantly, this Court has already rejected Zurich's argument; "[T]he Court disagrees with Zurich's assertion that the microorganism exclusion in the Real and

---

[60] *See e.g., Lawrence Gen. Hosp.*, 90 F.4th at 606.

[61] Docket 2-1 at 8.

[62] *See, e.g., Count Basie Theatre Inc. v. Zurich Am. Ins. Co.*, 2024 U.S. Dist. LEXIS 95978 (D.N.J. May 29, 2024).

[63] Docket 28 at 2.

[64] *Out W. Rest. Grp., Inc. v. Affiliated FM Ins. Co.*, No. 21-15585, 2022 U.S. App. LEXIS 24921, at *7-8 (9th Cir. Sept. 2, 2022) (explaining how insurance provisions can cover different types of losses and comparing Communicable Disease provision with Contamination provision that required direct physical loss).

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 15 of 18

Case 3:22-cv-00044-SLG     Document 50     Filed 11/27/24     Page 15 of 18

Property Coverage Form section of the policy categorically precludes the insurance coverages that Baxter is seeking" under the "Additional Coverages."[65]

Thus, this Court should conclude that Baxter stated a claim for breach of the Communicable Disease Coverage provision. Baxter met each of the elements required to sustain a claim under the Communicable Disease Coverage provision: Baxter alleged that orders from public health officials prevented access to a portion of Baxter's facility because of the threat of the spread of COVID-19. Nothing more is required for Baxter to demonstrate that it has a plausible claim for relief. The extent of any restrictions, prevented access to Baxter's facility, or business losses are questions that implicate the extent of Baxter's damages and must be determined at trial.

## II. Claims 8 and 9 Survive If Claim 7 Survives.

Baxter alleges two claims that are premised on Zurich's breach of the insurance contract. Claim 8 alleges that Zurich's denial of coverage was a breach of the implied covenant of good faith and fair dealing. Claim 9 alleges that Zurich's denial of coverage was in bad faith and constituted a tort. If this Court denies the motion to dismiss with respect to Claim 7 (breach of contract), then Claims 8 and 9 should also survive. Zurich offers no independent basis to dismiss Claims 8 and 9 if Claim 7 proceeds.

---

[65] Docket 28 at 2.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 16 of 18

Case 3:22-cv-00044-SLG    Document 50    Filed 11/27/24    Page 16 of 18

### III. Alternatively, Baxter Should Be Granted Leave to Amend the Complaint.

Courts examining analogous communicable disease insurance provisions have been reluctant to dismiss claims under Rule 12. "Whether Plaintiff's claims qualify for coverage under either type of coverage is a question of fact that cannot be resolved on a motion based on the pleadings."[66] If this Court determines that Baxter's Complaint fails to allege specific facts necessary to sustain Claim 7, Baxter should be granted leave to amend the complaint.

### CONCLUSION

For the foregoing reasons, this Court should deny Zurich's motion to dismiss Claims 7 through 9 in the Complaint. Baxter stated a claim for breach of the insurance policy's Communicable Disease Coverage provision. If Claim 7 proceeds, there is no reason to independently dismiss Claims 8 and 9.

Respectfully submitted.

DATED: November 27, 2024	LANDYE BENNETT BLUMSTEIN LLP

/s/ Andrew Erickson
_____
Andrew Erickson, Alaska Bar No. 1605049
Doug Karet, Alaska Bar No. 1211099

*Attorneys for Plaintiff Baxter Senior Living, LLC*

---

[66] *Live Nation Entm't Inc. v. Factory Mut. Ins. Co.*, 2022 U.S. Dist. LEXIS 25627, at * 21 (C.D. Cal. Feb. 3, 2022); *see also Lawrence Gen. Hosp.*, 90 F.4th at 606.

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 17 of 18

Case 3:22-cv-00044-SLG   Document 50   Filed 11/27/24   Page 17 of 18

# CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

/s/ Andrew Erickson
_____
Andrew Erickson

*Baxter Senior Living, LLC v. Zurich American Ins. Co.*     Case No. 3:22-cv-00044-SLG
Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss     Page 18 of 18

Case 3:22-cv-00044-SLG     Document 50     Filed 11/27/24     Page 18 of 18