# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

BAXTER SENIOR LIVING, LLC,

                Plaintiff,

   v.

ZURICH AMERICAN INSURANCE
COMPANY,

                Defendant.

Case No. 3:22-cv-00044-SLG

## ORDER ON MOTION TO DISMISS

Before the Court at Docket 10 is a Motion to Dismiss filed by Defendant Zurich American Insurance Company ("Zurich"). Plaintiff Baxter Senior Living, LLC ("Baxter") responded in opposition at Docket 18, to which Zurich replied at Docket 24. After the Alaska Supreme Court issued an opinion answering two questions certified by this Court,[1] and pursuant to this Court's order at Docket 47, Baxter filed a Supplemental Brief in Opposition to Motion to Dismiss at Docket 50, and Zurich filed a Supplemental Brief in Support of its Motion to Dismiss at Docket 54. Oral argument was not requested and was not necessary to the Court's decision. For the reasons set forth below, Zurich's Motion to Dismiss at Docket 10 is GRANTED.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Docket 25; *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*, 556 P.3d 757 (Alaska 2024).

# BACKGROUND[2]

In 2019, Baxter opened a senior living facility in Anchorage, Alaska.[3] To insure the facility, Baxter obtained a "Property Portfolio Protection" insurance policy from Zurich (the "Policy").[4] The Policy was effective as of September 1, 2019.[5]

The onset of the COVID-19 pandemic in early 2020 significantly impacted Baxter's operations. According to its Complaint, Baxter was subject to various public health orders from the State of Alaska that forced it to limit its operations. On March 12, 2020, Baxter received an email from the Alaska Department of Health and Social Services ("DHSS") listing the Center for Disease Control's ("CDC") "recommended . . . interventions [for] Assisted Living Facilities to reduce the risk covid-19 poses to residents" ("March 2020 Email").[6] The recommendations were as follows:

> Implement social distancing measures, e.g.:
> > Cancel large gatherings (e.g., group social events with 10 or more people)
> > Alter schedules to reduce mixing (e.g., stagger meal, activity, arrival/departure times)
> > Limit programs with external staff

---

[2] These background facts are drawn from the allegations in Baxter's complaint, which the Court must take as true for purposes of the present motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

[3] Docket 2-1 at 3, ¶ 7 (Compl.).

[4] Docket 2-1 at 3, ¶ 8 (Compl.).

[5] Docket 2-1 at 3, ¶ 10 (Compl.).

[6] Docket 2-1 at 217-19 (March 2020 Email).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 2 of 28

Case 3:22-cv-00044-SLG    Document 55    Filed 04/25/25    Page 2 of 28

Daily upon arrival temperature and respiratory symptom screening of attendees, staff.

Staff should wear masks and wash hands thoroughly before entering and after exit of room of inhabitants

Consider suspension of new admissions to facilities

Short-term closures as needed (e.g., if cases in staff, residents or clients who live elsewhere) for cleaning and contact tracing

Longer-term closure or quarantine of facility until situation resolved.

Suspend visitor access but arrange for alternate means for family members to communicate (e.g., staff assist with phone calls or videoconferences with visitors).

Exceptions for end-of-life family visits need to be considered, with limited access of visitors to other areas or people in the facility and these patients should be in a different areas [sic] to ensure other clients are not exposed to outside guests.[7]

Following the March 2020 Email, Baxter "suspended new admissions to its facility[,] . . . suspended guests' ability to visit the premises, and it instituted strict social distancing and hygiene protocols."[8] "[F]rom March 12, 2020 to at least March 26, 2020, Baxter did not admit any new residents . . . ."[9] Baxter faced shortages in obtaining personal protective equipment and was forced to incur extra expenses to purchase alternative personal protective equipment in light of the shortages.[10] In addition, "[t]here was a significant period of time where Baxter would not permit its residents to eat their meals in the dining hall, due to concerns

---

[7] Docket 2-1 at 217-18.

[8] Docket 2-1 at 231-32, ¶ 11 (Aff. of Karl Drucks).

[9] Docket 2-1 at 232, ¶ 15 (Aff. of Karl Drucks).

[10] Docket 2-1 at 233, ¶ 20 (Aff. of Karl Drucks).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 3 of 28

about the spread of Covid-19."[11]   The facility soon fell to below 60 percent occupancy.[12]

On August 24, 2020, DHSS issued an official document entitled *COVID-19 Recommended Guidance for Congregate Residential Settings* that recommended "aggressive efforts to limit COVID-19 exposure and to prevent the spread of COVID-19 within [residential care] facilities" ("August 2020 Document").[13]   The document set out a three-phase system, instructing residential care facilities to begin at the strictest first phase, and to progress to the next phase only after successfully operating for 14 days without a new-onset COVID-19 case.[14]   The recommended mitigation steps under phase one included prohibiting visitation, limiting communal dining to COVID-19 negative or asymptomatic residents only, requiring social distancing for communal dining, restricting group activities, avoiding non-medically necessary trips and activities outside the facility, screening all persons who enter the facility, and requiring staff to wear personal protective equipment.[15]   The August 2020 Document further stated that:

> This is a guidance document prepared by the Alaska [DHSS] . . . .
> [Residential care facilities] may choose to use this phased-in system,
> develop their own or adopt another guidance document. Upon

---

[11] Docket 2-1 at 233-34, ¶ 21 (Aff. of Karl Drucks).

[12] Docket 2-1 at 4, ¶ 11 (Compl.).

[13] Docket 2-1 at 221-26 (August 2020 Document).

[14] Docket 2-1 at 222.

[15] Docket 2-1 at 222-23.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 4 of 28

Case 3:22-cv-00044-SLG    Document 55    Filed 04/25/25    Page 4 of 28

adoption of the guidance document, the actions contained in that document become mandatory as your facilit[y's] requirements. Upon adoption of the guidance document, or something similar, the [facility] will be evaluated on its compliance. If a[ facility] fails to meet all the phase criteria and continues to progress to a less stringent phase, the facility may be subject to enforcement action(s) against their [Centers for Medicare & Medicaid Services] certification and/or state licensure through the survey process.[16]

Baxter alleges that "[b]ased on [both] public health orders, Baxter refused tours of the facility, reduced residents' access to friends and family, suspended new admissions and visits to the facility, and instituted strict distancing and hygiene protocols for all residents and staff."[17]  Baxter "continue[d] to incur additional costs as a result of Covid-19."[18]

Baxter submitted a claim to Zurich under the Policy.[19]  On September 28, 2020, Zurich denied Baxter's claim, stating that the Policy "does not provide coverage for the loss of revenue and extra expenses incurred by Baxter."[20]

On February 2, 2022, Baxter sued Zurich in Alaska Superior Court.[21] Baxter's Complaint alleged nine causes of action against Zurich: seven claims for breach of contract based on various provisions of the Policy (Claims 1 through 7)

---

[16] Docket 2-1 at 222.

[17] Docket 50 at 4 (internal quotation marks omitted) (quoting *Baxter Senior Living*, 556 P.3d at 760)

[18] Docket 2-1 at 234, ¶ 22 (Aff. of Karl Drucks).

[19] Docket 2-1 at 6, ¶ 21 (Compl.).

[20] Docket 2-1 at 6, ¶ 22 (Compl.).

[21] Docket 2-1 at 2, 21 (Compl.).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 5 of 28

and two claims alleging a breach of the implied covenant of good faith and fair dealing as well as bad faith in tort (Claims 8 and 9, respectively).[22]  Zurich removed the case to this Court on March 4, 2022, based on diversity jurisdiction.[23]

On March 24, 2022, Zurich moved to dismiss Baxter's Complaint for failure to state a claim upon which relief can be granted.[24]  Claims 1 through 6 relied on provisions of the Policy that conditioned coverage on "direct physical loss of or damage to" insured property.  On September 27, 2024, the Alaska Supreme Court answered the following two questions that this Court had certified:

1) Under Alaska law, can the presence of the COVID-19 virus at an insured property constitute "direct physical loss of or damage to" the property for the purposes of a commercial insurance policy?

2) Under Alaska law, can operating restrictions imposed on an insured property by COVID-19 pandemic-related governmental orders constitute "direct physical loss of or damage to" the property for the purposes of a commercial insurance policy?[25]

The Alaska Supreme Court answered both questions in the negative.[26]  On October 30, 2024, the Court ordered the parties to file supplemental briefing on Zurich's Motion to Dismiss with respect to the remaining issues.[27]

---

[22] Docket 2-1 at 10-20, ¶¶ 41-128 (Compl.).

[23] Docket 1.

[24] Docket 10.

[25] Docket 25; *Baxter Senior Living*, 556 P.3d 757.

[26] *Baxter Senior Living*, 556 P.3d at 758, 766-70.

[27] Docket 47.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 6 of 28

The parties agree that, following the Alaska Supreme Court's decision, the only remaining potentially viable claims are Claims 7 through 9; they also agree that Claims 8 and 9 survive only if Claim 7 does.[28] The Court agrees and therefore dismisses Claims 1 through 6 for failure to state a claim.

Claim 7 alleges breach of contract based on the Policy's "Communicable Disease Suspension of Operations-Business Income" provision (the "Communicable Disease Coverage provision").[29] Claim 8 alleges that "Zurich's failure to provide coverage was . . . a violation of its obligation to act in good faith under the terms of the . . . Policy."[30] And Claim 9 alleges that "Zurich's failure to provide coverage gives rise to liability in tort for bad faith."[31] "Thus, the dispositive issue before the Court is whether Baxter has pled a legally sufficient claim under the Communicable Disease Coverage provision."[32]

The Communicable Disease Coverage provision provides, in relevant part:

[T]he coverage provided at a "premises" or "reported unscheduled premises" will also cover the actual loss of "business income" you sustain due to an *order of an authorized public health official or governmental authority that prevents access to that "premises"* or "reported unscheduled premises", *or a portion of that "premises"* or "reported unscheduled premises", because of the discovery or suspicion of a communicable disease or threat of the spread of a

---

[28] Docket 54 at 2; Docket 50 at 2.

[29] Docket 2-1 at 18-19, ¶¶ 105-12 (Compl.).

[30] Docket 2-1 at 19, ¶¶ 113-19 (Compl.).

[31] Docket 2-1 at 20, ¶¶ 120-28 (Compl.).

[32] Docket 54 at 2; *see also* Docket 50 at 2.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 7 of 28

communicable disease at that "premises" or "reported unscheduled premises". Coverage provided applies only to the actual loss of "business income" you sustain, which begins 24 hours after you receive notice of closing by the authorized public health official or governmental authority, until the public health official or governmental authority authorizes you to reopen, or 90 days, whichever is earlier.[33]

Zurich asserts that Baxter fails to allege facts sufficient to state a claim under the Communicable Disease Coverage provision. First, Zurich asserts that the March 2020 Email is not an "order of an authorized public health official or governmental authority" within the meaning of the Policy.[34] And second, to the extent that the August 2020 Document is a government order, Zurich asserts that the claim still fails because the August 2020 Document did not "prevent[] access to" Baxter's facility or to "a portion of" Baxter's facility as required by the Policy.[35] Baxter disagrees, asserting first, that both the March 2020 Email and the August 2020 Document are government orders, and second, that the orders "limited access to Baxter's facility," which suffices under the Communicable Disease Coverage provision.[36]

The Court finds that Baxter's Complaint fails to state a claim for relief under the Communicable Disease Coverage provision, and that allowing leave to amend

---

[33] Docket 2-1 at 171 (emphases added).

[34] Docket 54 at 9; *see* Docket 2-1 at 171.

[35] Docket 54 at 9; *see* Docket 2-1 at 171.

[36] Docket 50 at 9-13.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 8 of 28

would be futile.  Therefore, the Court dismisses Claims 7 through 9 along with the rest of Baxter's claims.

**LEGAL STANDARDS**

### 1. Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[37]  Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[38]

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend.  Under Rule 15(a), a "court should freely give leave  when justice so requires."[39]  However, a court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[40]  Amendment may be considered futile

---

[37] *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[38] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[39] Fed. R. Civ. P. 15(a)(2).

[40] *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 9 of 28

when the claims lack a cognizable legal basis[41] or when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."[42]  Any additional facts alleged must be "consistent with the challenged pleading" to cure the deficiency.[43]

## 2. Alaska Insurance Contract Interpretation

Generally, Alaska courts construe insurance contracts "so as to provide that coverage which a layperson would have reasonably expected from a lay interpretation of the policy terms."[44]   "Thus the policyholder's objectively reasonable expectations govern, even if painstaking study of the policy provisions would have negated those expectations."[45]   To determine the reasonable expectations of the parties, Alaska courts look to: "(1) the language of the disputed provisions in the policy; (2) other provisions in the policy; (3) extrinsic evidence; and (4) case law interpreting similar provisions."[46]  Alaska law provides that courts should "interpret ambiguous insurance policies in favor of the purported insured."[47]

---

[41] *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992).

[42] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

[43] *Or. Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

[44] *Baxter Senior Living*, 556 P.3d at 764 (quoting *Downing v. Country Life Ins. Co.*, 473 P.3d 699, 704 (Alaska 2020)).

[45] *Id.* (internal quotation marks omitted) (quoting *Downing*, 473 P.3d at 704).

[46] *Id.* (quoting *Downing*, 473 P.3d at 704).

[47] *Id.* (internal quotation marks omitted) (quoting *Downing*, 473 P.3d at 704).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 10 of 28

However, "the mere fact that two parties to an insurance contract have differing subjective interpretations of that contract does not make it ambiguous."[48]  Rather, "[a]mbiguity exists 'only when the contract, taken as a whole, is reasonably subject to differing interpretations.'"[49]

## DISCUSSION

There are two requirements of the Communicable Disease Coverage provision at issue here.   The first is that there be an "order of an authorized public health official or governmental authority."[50]  The second is that the order "prevents access to th[e] 'premises' . . . or a portion of th[e] 'premises.'"[51]  The Court first finds that the March 2020 Email is not an order within the meaning of the Policy. The Court next finds that the August 2020 Document is a government order; however, it also finds that the August 2020 Document does not prevent access to all or a portion of Baxter's premises.  The Court therefore finds that Baxter fails to

---

[48] *Id.* (internal quotation marks omitted) (quoting *Downing*, 473 P.3d at 704).

[49] *Id.* (quoting *Downing*, 473 P.3d at 704).

[50] Docket 2-1 at 171.

[51] Docket 2-1 at 171.

In its Supplemental Brief in Opposition to Motion to Dismiss, Baxter also discusses a third requirement of the Communicable Disease Coverage provision, namely that "the restrictions imposed by the public health orders must be 'because of the discovery or suspicion of a communicable disease or threat of the spread of a communicable disease at that premises.'" Docket 50 at 14 (quoting Docket 2-1 at 171).  However, because Zurich does not challenge this third requirement in its Supplemental Brief in Support of its Motion to Dismiss, *see* Docket 54, the Court considers this third requirement to be conceded, and agrees that all government directives issued here appear to have been issued due to a "threat of the spread of a communicable disease," namely, COVID-19.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 11 of 28

state a viable claim under the Communicable Disease Coverage provision with respect to both the March 2020 Email and the August 2020 Document.

## 1. Is either the March 2020 Email or the August 2020 Document a Government "Order"?

The Court first considers whether either the March 2020 Email or the August 2020 Document are "orders" within the meaning of the Policy. Zurich asserts that the March 2020 Email is not a government order within the meaning of the Communicable Disease Coverage provision because "it is recommended guidance only."[52] Zurich states further that "[t]o the extent the August [2020 Document] can be considered an 'order,' Baxter's claim still fails," but notes that some of the language of the August 2020 Document—stating what facility operators "should" do, factors that "could be used," and informing facility operators that they "may choose to use this phased-in system, develop their own or adopt another guidance document"—suggests that it is mere guidance as well.[53]

Baxter contends that both the March 2020 Email and the August 2020 Document are government orders within the meaning of the Policy. With respect to the March 2020 Email, Baxter maintains that it "reasonably considered an urgent email from the DHSS licensing department—which has the power to issue fines and suspend or revoke Baxter's license—passing on CDC directives—and arriving

---

[52] Docket 54 at 9.

[53] Docket 54 at 9 & n.1 (quoting Docket 2-1 at 221-22).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 12 of 28

right at the outset of a global health crisis—as a public health order that required immediate compliance," citing *Lawrence General Hospital v. Continental Casualty Co.* and *Northwell Health, Inc. v. Lexington Insurance Co.* for this proposition.[54] With respect to the August 2020 Document, Baxter points to language from a prior order of this Court as well as from the Alaska Supreme Court opinion on the certified questions in this case indicating the document's "mandatory" nature.[55]

While the Policy does not define the term "order," the Court looks to "the language of the disputed provision[] in the policy," "other provisions in the policy," and "case law interpreting similar provisions" to determine its meaning.[56] On its face, the term "order" indicates that the directive must be compulsory, and other circuits construing similar policy provisions agree.[57] In *Lawrence General Hospital v. Continental Casualty Co.*, the First Circuit noted that a "choice" between compliance with stated guidelines or the imposition of repercussions can rise to

---

[54] Docket 50 at 10 & n.38 (first citing 90 F.4th 593, 604 (1st Cir. 2024); and then citing 550 F. Supp. 3d 108, 118-19 (S.D.N.Y. 2021)).

[55] Docket 50 at 11-12 (first citing Docket 25 at 4; and then citing *Baxter Senior Living*, 556 P.3d at 760-61).

[56] *Baxter Senior Living*, 556 P.3d at 764 (quoting *Downing*, 473 P.3d at, 704).

[57] *See Lawrence Gen. Hosp.*, 90 F.4th at 603-04 (stating that, "[a]s other courts interpreting this term have found, and we agree, an 'order' must be compulsory," in interpreting a "Disease Contamination Coverage Provision" requiring "an evacuation or decontamination order . . . by the . . . authorized public health official or governmental authority because of the discovery or suspicion of a communicable disease") (first citing *Conn. Child.'s Med. Ctr. v. Cont'l Cas. Co.*, Case No. 22-322, 2023 WL 2961738, at *2 (2d Cir. Apr. 17, 2023); and then citing *PS Bus. Mgmt., LLC v. Fireman's Fund Ins. Co.*, Case No. 21-30723, 2022 WL 2462065, at *4 (5th Cir. July 6, 2022))).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 13 of 28

the requisite level of compulsory.[58]  In addition, the surrounding language in the Communicable Disease Coverage provision indicates that the term "order" is to be narrowly construed.  The provision states that the communicable-disease coverage period "begins 24 hours after [the facility] receive[s] notice of closing" and lasts "until the public health official or governmental authority authorizes [the facility] to reopen, or 90 days, whichever is earlier."[59]  This implies that, to trigger coverage, an order must be a government directive of sufficient legal force that it renders the policyholder legally unable to reopen the closed portion of the premises without subsequent government authorization.

The Court finds that the March 2020 Email was not an "order" within the meaning of the Policy.  The email contained the CDC's recommendations for assisted living facilities;[60] it did not impose any binding requirements or repercussions for noncompliance.  The Alaska Supreme Court described it accordingly: "in March 2020, . . . the Alaska Department of Health and Social

---

[58] *Id.* at 604-05 (holding that a directive to a hospital to comply with certain "public health and safety guidelines" or else forgo the ability to resume elective procedures was "no choice at all").

The Court notes that the other case cited by Baxter is not helpful to the Court here, because the orders at issue there were clearly orders and not guidance documents.  *See Northwell Health*, 550 F. Supp. 3d at 114, 119 (finding that the plaintiff clearly satisfied the requirement that an "authorized government agency . . . issued an order" where the Office of the Governor of the State of New York and Office of the Mayor of New York City issued "stay-at-home orders" and "an executive order" closing non-essential businesses).

[59] Docket 2-1 at 171.

[60] Docket 2-1 at 217 ("The CDC has recommended the following interventions be taken by Assisted Living Facilities to reduce the risk covid - 19 poses to residents of your facilities. . . .").

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 14 of 28

Services (DHSS) sent Centers for Disease Control (CDC) recommendations to owners and operators of assisted living facilities."[61]   Because it is not an order, there is no viable claim for Communicable Disease coverage under Claim 7 based on this email.

The Court finds that the August 2020 Document does constitute an "order" within the meaning of the Policy.   As this Court previously stated, "[a]lthough it was entitled 'recommended guidance,' the August 2020 [D]ocument invoked the Governor of Alaska's 'Public Health Disaster Emergency' powers, and it specified that residential care facilities' adoption of the phased-in system or a 'similar' system was mandatory."[62]   And, as the Alaska Supreme Court noted in its description of the August 2020 Document, "if a facility 'fails to meet all the phase criteria and continues to progress to a less stringent phase, the facility may be subject to enforcement action(s).'"[63]   This use of mandatory language coupled with the threat of an enforcement action for noncompliance render the August 2020 Document an "order of an authorized public health official or governmental authority" for purposes of the Communicable Disease Coverage provision.

---

[61] *Baxter Senior Living*, 556 P.3d at 760.

[62] Docket 25 at 4 (citing Docket 2-1 at 221-26).

[63] *Baxter Senior Living*, 556 P.3d at 760-61 (citing 42 C.F.R. § 488.402, 488.406, 488.408 (2023)).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 15 of 28

## 2. Did the August 2020 Document "Prevent Access" to the Premises?

Second, Zurich asserts that, pursuant to the Communicable Disease Coverage provision, access to the premises must be "prevented" rather than merely "limited," and that Baxter does not allege that access was "prevented" by a government order.[64] Baxter maintains that both the March 2020 Email and the August 2020 Document limited access to Baxter's facility and that the Communicable Disease Coverage provision therefore applies.[65] The Court only addresses the August 2020 Document since the Court has determined that the March 2020 Email is not a government order within the meaning of the Policy.

Zurich focuses on the phrase "prevents access." Zurich points to the "ordinary and customary usage of the word 'prevent,'" which it asserts "must stop or prohibit access to the facility or a portion thereof."[66] Zurich indicates that the surrounding language of the provision—stating that the communicable-disease coverage period "begins 24 hours after [the facility] receive[s] notice of closing" and lasts "until the public health official or governmental authority authorizes [the facility] to reopen, or 90 days, whichever is earlier"—aligns with this "common understanding."[67] Zurich then cites *Reconstructive Orthopaedic Associates II, LLC*

---

[64] Docket 54 at 10-17.

[65] Docket 50 at 12-13.

[66] Docket 54 at 10-11.

[67] Docket 54 at 11 (quoting Docket 2-1 at 171).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 16 of 28

Case 3:22-cv-00044-SLG    Document 55    Filed 04/25/25    Page 16 of 28

*v. Zurich American Insurance Co.*, an Eastern District of Pennsylvania case interpreting the same Communicable Disease Coverage provision at issue here and finding that government orders to suspend elective admissions, surgeries, and procedures at a health care facility did not satisfy the "prevents access" requirement because the orders "did not deny access to the insured premises."[68] Zurich also collects a series of cases that have interpreted similar communicable disease provisions and that have "consistently held that, for an order to 'prohibit access' to a business's location, it must prevent the insured from using it for *any* business purpose."[69]

Baxter responds that "the Communicable Disease Coverage provision does not require Baxter to establish that public health orders completely shuttered the facility."[70] Baxter contends that "the policy specifically contemplates partial

---

[68] Docket 54 at 12; Case No. CV 21-4003, 2022 WL 4586131, at *1, 6 (E.D. Pa. Sept. 29, 2022).

[69] Docket 54 at 12-14 & n.3 (emphasis in original) (first citing *Inspira Health Network v. Am. Guarantee & Liab. Ins. Co.*, 637 F. Supp. 3d 200, 210 (D.N.J. 2022); then citing *St. Tammany Parish Hosp. Serv. Dist. No. 2 v. Zurich Am. Ins. Co.*, 593 F. Supp. 3d 399, 416-420 (E.D. La. 2022); then citing *Northwell Health*, 550 F. Supp. 3d at 119; then citing *Billings Clinic v. Am. Guarantee & Liab. Ins. Co.*, Case No. CV 21-32-BLG-SPW-TJC, 2022 WL 773207, at *7 (D. Mont. Feb. 22, 2022), *report and recommendation adopted by* 2022 WL 767108 (D. Mont. Mar. 14, 2022); then citing *Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.,* Case No. 20 CV 50284 2021 WL 346423, at *3, 5 (N.D. Ill. Jan. 19, 2021); and then citing *CC-Dev't Grp. v. Axis Surplus Ins. Co.*, Case No. 22 CH 02164, 2023 WL 8690890, at *4-5 (Ill. Cir. Ct. Apr. 10, 2023)). Later in its supplemental brief, Zurich discusses two additional cases for this same proposition. Docket 54 at 15-17 (first citing *HealthPartners, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 587 F. Supp. 3d 874, 884 (D. Minn. 2022); and then citing *Palomar Health v. Am. Guarantee & Liab. Ins. Co.*, Case No. 3:21-cv-00490-BEN-BGS, 2021 WL 4035005, at *9 (S.D. Cal. Sept. 3, 2021), *aff'd*, 2022 WL 3006356 (9th Cir. July 28, 2022)).

[70] Docket 50 at 9.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 17 of 28

closures," pointing to language in the provision extending coverage for government orders that prevent access to a "portion" of the premises.[71] Baxter seeks to distinguish the cases cited by Zurich, noting that the communicable disease insurance policy provisions in those cases are not analogous to the provision here because they required the "[*s*]*uspension* of the [i]nsured's business activities" and for "portions of the location [to be] declared *uninhabitable* due to the threat of the spread of communicable disease."[72] Zurich responds that "Alaska courts will consider 'case law interpreting similar provisions' when interpreting insurance policies," and that Baxter "ignores the similarities between the policy language at issue and the analysis undertaken by the courts in those cases."[73]

Zurich then points to the facts as alleged by Baxter, asserting that both the March 2020 Email and the August 2020 Document "expressly allowed" "Baxter's facility [to] continue[] to operate,"[74] and that a restriction that "had the effect of limiting access to portions of Baxter's facility" falls short of preventing access.[75] Baxter disagrees and points to the March 2020 Email, in which the CDC "recommended that assisted living facilities, including Baxter, implement social

---

[71] Docket 50 at 9, 12 (emphasis omitted) (citing Docket 2-1 at 171).

[72] Docket 50 at 13 (emphases and first two alterations in original) (first citing *HealthPartners*, 587 F. Supp. 3d at 877; and then citing *Palomar Health*, 2021 WL 4035005, at *9).

[73] Docket 54 at 15 (quoting *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004)).

[74] Docket 54 at 15 (emphasis omitted).

[75] Docket 54 at 14-15 (internal quotation marks omitted) (quoting Docket 50 at 13).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 18 of 28

distancing measures, consider closure or quarantine, cancel large gatherings, suspend visitor access, and consider short-term closures as needed."[76] Baxter alleges that in response, it "instituted a 'lockdown' of its facility" and "significantly reduced the residents' friends and families from [sic] physically accessing the facility."[77] As one example, Baxter notes that it closed its dining hall for a period of time.[78] Zurich contends that the fact that "*Baxter* would not permit its residents to eat their meals in the dining hall" does not save Baxter's claim because "what Baxter chose to do is irrelevant under the language of the Communicable Disease Coverage—it is the *order* that must prevent access," and "Baxter was not required to force residents to eat outside the dining hall."[79]

Finally,[80] Baxter contends that Alaska law requires the Court to "primarily consider Baxter's reasonable expectations when interpreting the Communicable

---

[76] Docket 50 at 12 (citing Docket 2-1 at 217-18).

[77] Docket 50 at 12-13 (internal quotation marks omitted) (first citing Docket 2-1 at 4, ¶¶ 11-12 (Compl.); and then quoting Docket 2-1 at 247, ¶ 7 (Aff. of Jonie Suzuki)).

[78] Docket 50 at 13 (first citing Docket 2-1 at 233, ¶ 21 (Aff. of Karl Drucks); and then citing Docket 2-1 at 252, ¶ 28 (Aff. of Jonie Suzuki)).

[79] Docket 54 at 14-15 (internal quotation marks omitted) (emphases in original) (first quoting Docket 2-1 at 233, ¶ 21 (Aff. of Karl Drucks); then citing Docket 2-1 at 252, ¶ 28 (Aff. of Jonie Suzuki); then citing Docket 2-1 at 217-18 (March 20202 Email); and then citing Docket 2-1 at 222 (August 2020 Document)).

[80] Baxter raises one last point related to Communicable Disease Coverage after this final point discussed by the Court, which is that "Zurich's argument that Claim 7 is barred by the insurance policy's microorganism exclusion is meritless." Docket 50 at 15. However, "Zurich does not take the position that the Policy's Microorganisms Exclusion applies to loss covered by the Communicable Disease Coverage." Docket 54 at 20 n.7.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 19 of 28

Disease Coverage provision."[81]   Here, "Baxter reasonably expected that the Communicable Disease Coverage provision would apply to CDC and DHSS orders issued to mitigate disease outbreaks . . . and provide coverage for losses necessarily incurred as a result of compliance with those directives."[82]   Baxter provides two arguments to support this: first, that "Zurich apparently shared that reasonable expectation because Zurich abruptly removed the Communicable Disease Coverage provision from its insurance policy in July 2020";[83] and second, that Zurich paid claims under a similar Communicable Disease Coverage provision in a District of New Jersey case, *Count Basie Theatre Inc. v. Zurich American Insurance Co.*[84]

Zurich maintains that "a reasonable policyholder would not expect coverage under the Communicable Disease Coverage" provision.[85]   Zurich asserts that "the Alaska Supreme Court routinely rejects policyholders' claims that they subjectively expected coverage contrary to policy language . . . because the 'reasonable expectations' test 'is not to be used as an instrument for ignoring or rewriting insurance contracts'" and that the "Supreme Court also frequently looks to case

---

[81] Docket 50 at 14 (citing *Downing*, 473 P.3d at 704).

[82] Docket 50 at 14-15 (emphasis omitted).

[83] Docket 50 at 15 (citing Docket 2-1 at 8 (Compl.)).

[84] Docket 50 at 15 (citing Case No. CV 21-00615 (JKS)(LDW), 2024 WL 2763762 (D.N.J. May 29, 2024)).

[85] Docket 54 at 17.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 20 of 28

law outside of Alaska and rejects reasonable expectations claims contrary to the interpretation adopted by the majority of courts."[86]  Zurich takes issue with Baxter's reliance on Zurich's removal of the Communicable Disease Coverage provision as evidence of anything, citing an Alaska Supreme Court case for the proposition that "declining to continue a certain coverage is not a factor considered under Alaska law for interpretation of an insurance policy."[87]  And Zurich distinguishes *Count Basie* on the basis that, in that case, "the orders did in fact close the insured's performing arts centers," which is "the crucial difference."[88]

As noted above, Alaska courts construe insurance contracts according to a policyholder's "objectively reasonable expectations."[89]  To determine reasonable expectations, Alaska courts look to, among other things, "case law interpreting similar provisions."[90]  And while courts "interpret ambiguous insurance policies in favor of the purported insured,"[91] the Alaska Supreme Court has found no

---

[86] Docket 54 at 17-18 (first citing *Farquhar v. Alaska Nat'l Ins. Co.*, 20 P.3d 577, 580 (Alaska 2001); and then citing *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.,* 185 P.3d 84, 87-90 (Alaska 2008)).

[87] Docket 54 at 18 (citing *Teel,* 100 P.3d at 4).

[88] Docket 54 at 19 (citing 2024 WL 2763762, at *3, 9).

[89] *Baxter Senior Living*, 556 P.3d at 764 (internal quotation marks omitted) (quoting *Downing*, 473 P.3d at 704).

[90] *Id.* (quoting *Downing*, 473 P.3d at 704).

[91] *Id.* (internal quotation marks omitted) (quoting *Downing*, 473 P.3d at 704).

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 21 of 28

coverage where other state courts "overwhelmingly interpret[]" the policy provisions to deny coverage.[92]

The Court finds that the August 2020 Document did not "prevent access" to the premises as required by the Policy. Case law interpreting similar communicable disease provisions overwhelmingly denies coverage for government orders functionally equivalent to the order at issue here. There are at least nine cases in which courts denied coverage because those courts interpreted the communicable disease provisions as requiring a "complete prohibition of access," and the government orders fell short of doing so.[93] In most of the cases, the government orders restricted the facilities' ability to perform elective or non-emergent procedures.[94] Some orders also barred "non-essential" personnel from

---

[92] *See id.* at 770 (holding that coverage was excluded where "case law across the country overwhelmingly interprets" the disputed phrase to exclude coverage and "all but one [court] have rejected Baxter's argument"); *cf. Est. of Wheeler v. Garrison Prop. & Cas. Ins. Co.*, 564 P.3d 611, 619-21 (Alaska 2025) (holding that an insured could reasonably expect coverage for injuries despite a pollution coverage exclusion where there were "two camps" of cases interpreting pollution exclusion coverage, and finding the second camp to be more persuasive).

[93] *St. Tammany*, 593 F. Supp. 3d at 417-19; *see Reconstructive Orthopaedic*, 2022 WL 4586131, at *6; *Palomar Health*, 2021 WL 4035005, at *9; *Inspira Health Network*, 637 F. Supp. 3d at 207; *Northwell Health*, 550 F. Supp. 3d at 119; *Billings Clinic*, 2022 WL 773207, at *7-8; *Danville Regul. Med. Ctr., LLC v. Am. Guarantee & Liab. Ins. Co.*, Case No. 4:21-CV-00012, 2022 WL 16914516, at *3-4 (W.D. Va. Nov. 14, 2022); *HealthPartners*, 587 F. Supp. 3d at 884; *CC-Dev't Grp.*, 2023 WL 8690890, at *4.

[94] *Reconstructive Orthopaedic*, 2022 WL 4586131, at *1; *Palomar Health*, 2021 WL 4035005, at *1; *St. Tammany*, 593 F. Supp. 3d at 418; *Inspira Health Network*, 637 F. Supp. 3d at 204; *Northwell Health*, 550 F. Supp. 3d at 119; *Billings Clinic*, 2022 WL 773207, at *1; *Danville Regul. Med. Ctr.*, 2022 WL 16914516, at *1-2; *HealthPartners*, 587 F. Supp. 3d at 877. In one case, it is unclear what the government orders directed because the "Plaintiffs refer generally to various health organization guidelines and governmental orders." *CC-Dev't Grp.*, 2023 WL 8690890, at *4.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 22 of 28

the facilities,[95] or suspended visitation.[96]  These government orders are sufficiently similar to the August 2020 Document, which is the relevant order here.[97]  The August 2020 Document—which called on Baxter to prohibit visitation, limit communal dining, require social distancing, restrict group activities, avoid non-medically necessary trips, screen people, and require personal protective equipment[98]—contained limitations on activities similar to the aforementioned limitations, rather than completely prohibiting access to all or a portion of the facility.  The "period of time where Baxter would not permit its residents to eat their meals in the dining hall"[99] does appear to have "prevent[ed] access" to a portion of the premises.  But that directive came from Baxter, rather than from the August 2020 Document.  According to the terms of the Communicable Disease Coverage provision, the government order itself must prevent access to the premises.[100]  As one Illinois state court stated:

> [E]ven taking as true Plaintiffs' allegations that they themselves limited access to, and closed off certain portions of their facilities (common spaces, fitness facilities, and other amenities), this does not make them uninhabitable within the meaning of this coverage provision. . . . Under

---

[95] *Palomar Health*, 2021 WL 4035005, at *1.

[96] *Northwell Health*, 550 F. Supp. 3d at 119.

[97] *See* discussion *supra* p. 15.

[98] Docket 2-1 at 222-26.

[99] Docket 2-1 at 233-34, ¶ 21 (Aff. of Karl Drucks).

[100] *See* Docket 2-1 at 171 (recognizing coverage for loss of business income "due to an order of an authorized public health official or governmental authority that prevents access to that 'premises' . . . or a portion of that 'premises'").

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 23 of 28

Plaintiffs' reading, an insured could self-declare coverage simply by prohibiting access to its locations for more than 24 hours, proclaiming they are uninhabitable. Such a subjective approach is unworkable and contrary to the plain language of the Interruption by Communicable Disease provision. . . . It is the governmental agency, not the insured, who shall declare portions of the location uninhabitable due to the threat of the spread of communicable disease.[101]

The communicable disease provisions in these cases are likewise sufficiently similar to the Communicable Disease Coverage provision here so as to render them analogous. Other than *Reconstructive Orthopaedic*, which concerns the same Communicable Disease Coverage provision that is at issue here,[102] all of the other cases involve a communicable disease provision that includes the following language (or something similar) that requires the government order to cause portions of the facility to be declared uninhabitable:

The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities[103] at an Insured Location if the Suspension is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of

---

[101] *CC-Dev't Grp.*, 2023 WL 8690890, at *4.

[102] *Compare* 2022 WL 4586131, at *6, *with* Docket 2-1 at 171.

[103] Baxter notes that these provisions also require a "*[s]uspension* of the [i]nsured's business activities" while this Communicable Disease provision does not. Docket 50 at 13 (emphasis and alterations in original). In the Court's view, this is not a meaningful difference because it does not appear to heighten the burden for those other policies; the Court notes that it would appear to be an easier burden for an insured to show that a government order "suspended" activity than to show that the order prevented access to all or portion of the premises.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 24 of 28

communicable disease, prohibiting[104] access to those portions of the Location.[105]

However, in some of these cases, the courts appeared to rely only on the "prohibiting access" language before finding that the government orders at issue were not covered.[106]  In other cases, courts at least made a finding with respect to whether the government orders "prohibited access" in addition to finding that the

---

[104] Zurich notes that, while the policies in the above cases require the order to "prohibit" access, "[t]here is no substantive difference between the words 'prevent' and 'prohibit' in this context." Docket 54 at 12-13 (quoting *Prohibit*, Merriam-Webster Online Dictionary, https://www.merriamwebster.com/dictionary/prohibit (defining "prohibit" to mean "to forbid by authority: enjoin" or "to *prevent* from doing something") (emphasis in original)).  Baxter does not take issue with this observation, *see* Docket 50, and the Court agrees with Zurich that the difference between "prevent" and "prohibit" is not a meaningful one.

[105] *Inspira Health Network*, 637 F. Supp. 3d at 203; *Billings Clinic*, 2022 WL 773207, at *2; *HealthPartners*, 587 F. Supp. 3d at 877; *CC-Dev't Grp.*, 2023 WL 8690890, at *3; *see Palomar Health*, 2021 WL 4035005, at *9; *St. Tammany*, 593 F. Supp. 3d at 416; *Northwell Health*, 550 F. Supp. 3d at 112; *Danville Regul. Med. Ctr.*, 2022 WL 16914516, at *1.

[106] *See Palomar Health*, 2021 WL 4035005, at *9 (finding that the plaintiff's claim failed because it was to be covered "only if 'such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, *prohibiting access* to those portions of the [l]ocation'" and the plaintiff "does not assert they were prohibited by government order from entering their facility" (emphasis and alteration in original) (citation omitted)); *St. Tammany*, 593 F. Supp. 3d at 418-19 ("Importantly, '[t]he Fifth Circuit has held that the critical word is 'prohibit,' which means . . . 'to forbid access by authority or command.' . . . [A] 'complete prohibition of access' is required. In this case, even the most stringent governmental orders did not completely forbid access to Plaintiff's premises . . . ." (footnotes omitted)); *Inspira Health Network*, 637 F. Supp. 3d at 207 ("[T]he Executive Order restricted certain activities on the Insured Location but did not prohibit access to the Insured Location as is required to trigger coverage under the [Interruption by Communicable Disease] Term. To date, every court that has addressed whether similar governmental orders suspending elective surgeries and invasive procedures triggered coverage under the same or a similar [Interruption by Communicable Disease] Term has found that it does not because the orders did not prohibit access to any location . . . .").

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 25 of 28

orders did not deem the premises uninhabitable.[107]  Only one case seemed to rely solely on a habitability finding.[108]

The Court is not persuaded to find otherwise by Baxter's citation to *Count Basie Theatre Inc. v. Zurich*.  There, the executive order at issue required, "among other things, the closure of [e]ntertainment centers."[109]  There was no question that this was covered by the communicable disease provision and Zurich paid accordingly; the case instead concerned applicable insurance limits.[110]  Nor is the Court convinced that Zurich's subsequent removal of the Communicable Disease Coverage provision supports Baxter position.[111]

---

[107] *See Northwell Health*, 550 F. Supp. 3d at 119 ("These orders do not deem uninhabitable or prohibit access to Northwell's facilities . . . . To the contrary, the Orders assume that patients will continue to 'inhabit' hospitals, regulate the way patients can safely do so, and establish conditions under which members of the public may access hospitals and patients. . . . While the Orders certainly restrict access to hospitals, they fall far short of 'prohibiting' access."); *Billings Clinic*, 2022 WL 773207 ("But the Clinic does not allege any facts plausibly showing that any portion of its locations were declared uninhabitable.  Also critically absent are any facts explaining how, when and where access to its locations was prohibited."); *Danville Regul. Med. Ctr.*, 2022 WL 16914516, at *3 ("By its plain terms, the [Interruption by Communicable Disease] endorsement requires that the government order declare a part of the insured premises 'uninhabitable' and 'prohibit' access to those locations. The Virginia Order did no such thing."); *CC-Dev't Grp.*, 2023 WL 8690890, at *4 ("Because Plaintiffs have not, and cannot point to an order of a governmental agency that caused a suspension, declared Plaintiffs' facilities uninhabitable, or prohibited access for more than 24 hours and until the locations could be restored so as to satisfy the authorized governmental agency, Count III fails as a matter of law.").

[108] *See HealthPartners*, 587 F. Supp. 3d at 884 ("Nothing in the Government Orders suggests that any HealthPartners location was declared uninhabitable. Minnesota simply restricted operations by prohibiting non-essential and elective surgeries and procedures.").

[109] *Count Basie Theatre*, 2024 WL 2763762, at *3 (alteration in original) (internal quotation marks and citation omitted).

[110] *Id.*, at *4, 6.

[111] This is similar to an argument, rejected by the Ninth Circuit, that evidence of subsequent policies can be used to make "negative inferences" about former policies. *See Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989) (rejecting the policyholder's argument

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 26 of 28

The Court notes that there is additional support for its finding in the Alaska Supreme Court's discussion of a related policy provision when answering the certified questions in this case. The Civil Authority Coverage for Business Income provision states:

> We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension", or delay in the start, of your "operations" if the "suspension" or delay is caused by *order of civil authority that prohibits access to the "premises" or "reported unscheduled premises".* That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile of the "premises" or "reported unscheduled premises" which sustains a "business income" loss. The loss or damage must be directly caused by a "covered cause of loss".[112]

Other courts, in analyzing communicable disease coverage, have noted that this Civil Authority Coverage provision contains policy language analogous to the communicable disease coverage at issue here, and have applied case law interpreting that provision to their analysis.[113] In the Alaska Supreme Court opinion answering the certified questions in this case, the Court dismissed Baxter's Civil Authority Coverage claim, and after finding that the damage was otherwise not covered, held that this claim "also fails because that provision requires an 'order of civil authority that prohibits access to the premises.' But Baxter does not allege

---

that, because a new policy made an exclusion unambiguous, the previous policy necessarily lacked that same exclusion).

[112] Docket 2-1 at 150 (emphasis added).

[113] *See St. Tammany*, 593 F. Supp. 3d at 419; *Inspira Health Network*, 637 F. Supp. 3d at 208.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 27 of 28

that DHSS notices and guidance prohibited access to its premises."[114]  Baxter does not respond to this language from the Alaska Supreme Court.[115]

For the foregoing reasons, the Court finds that Baxter's Complaint fails to state a claim for coverage under the Communicable Disease Coverage provision. The Court therefore dismisses Claim 7, and likewise dismisses derivative Claims 8 and 9.[116]  The Court finds that amendment is futile; the claims fail with respect to the two potential government orders that Baxter identifies in its Complaint, and there is therefore no set of facts that can be applied consistent with the Complaint to state a claim for relief.[117]

## CONCLUSION

For the reasons set forth above, Zurich's Motion to Dismiss at Docket 10 is **GRANTED**.  Claims 1 through 6 are **DISMISSED WITH PREJUDICE.**  Claims 7 through 9 are likewise **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to enter a Final Judgment for Defendant and close this case.

DATED this 25th day of April, 2025.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[114] *Baxter Senior Living*, 556 P.3d at 768-69.

[115] *See* Docket 50.

[116] *See* Docket 50 at 2; Docket 54 at 2.

[117] *See Or. Clinic, PC*, 75 F.4th at 1073-74; *see also* Docket 54 at 20-21.

Case No. 3:22-cv-00044-SLG, *Baxter Senior Living, LLC v. Zurich Am. Ins. Co.*
Order on Motion to Dismiss
Page 28 of 28

Case 3:22-cv-00044-SLG    Document 55    Filed 04/25/25    Page 28 of 28